## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| EMEKA MICHAEL ABANFI, JR., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| Warden SHEILA OUBRE; | : | |
| Deputy Warden LARRY JORDAN; | : | |
| Deputy Warden DOUG UNDERWOOD; | : | |
| Deputy Warden NATHAN HANDBERRY; | : | |
| Officer WILLIAM GRIFFIN; | : | |
| BRIAN OWENS, | : | |
| | : | NO. 5:12-CV-421 (MTT) |
| | : | |
| Defendants | : | **ORDER** |

Plaintiff **EMEKA MICHAEL ABANIFI, JR.**, an inmate at Baldwin State Prison in Milledgeville, Georgia, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.

Plaintiff also seeks leave to proceed without prepayment of the $350.00 filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Based on Plaintiff's submissions, the Court finds that Plaintiff is unable to prepay the filing fee. Accordingly, the Court **GRANTS** Plaintiff's motion to proceed *in forma pauperis* and waives the initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). Plaintiff is nevertheless obligated to pay the full filing fee, as is directed later in this Order and Recommendation. The Clerk of Court is directed to send a copy of this Order and Recommendation to the business manager of Baldwin State Prison.

1

### *I.  STANDARD OF REVIEW*

Pursuant to 28 U.S.C. § 1915A(a), a federal court is required to conduct an initial screening of a prisoner complaint "which seeks redress from a governmental entity or officer or employee of a governmental entity." Section 1915A(b) requires a federal court to dismiss a prisoner complaint that is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief."

A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and that the complaint "must contain something more . . . than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (internal quotations and citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In making the above determinations, all factual allegations in the complaint must be viewed as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). Moreover, "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will,

therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

In order to state a claim for relief under § 1983, a plaintiff must allege that: (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of his claim or claims, then the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because the plaintiff's factual allegations were insufficient to support the alleged constitutional violation). *See also* 28 U.S.C. 1915A(b) (dictating that a complaint, or any portion thereof, that does not pass the standard in §   1915A "shall" be dismissed on preliminary review).

## *II. STATEMENT OF CLAIMS*

Plaintiff states that when he arrived at Baldwin State Prison in April 2012, Warden Sheila Oubre and Deputy Wardens Handberry and Underwood determined that he should be housed in G Building Dorm 1.   Plaintiff states that these Defendants were all aware that inmates housed in this dorm have gang affiliations and violent histories.

According to Plaintiff, on April 19, 2012, he "was threatened and attacked by the gang known as 'GF.'"   (Doc. 1 at 4).   Afterwards, Plaintiff requested to be moved from G Building Dorm 1 because he feared for his safety.   Plaintiff states that the officer on duty informed him that it was the Warden's policy to punish any inmate who requested to leave the dorm.   The

3

Complaint shows that the officer wrote a disciplinary report in order to punish Plaintiff.

Plaintiff explains that he was charged with "failure to follow instructions" and attended a disciplinary hearing on May 10, 2012. Plaintiff states that he explained to the hearing officer, Lt. Lillian Warren, that he was in danger and needed to be moved. He states that Lt. Warren found him guilty without justification.

Plaintiff claims that there were several incidents of gang violence at Baldwin State Prison between May 4, 2012 and July 9, 2012, which included at least nine stabbings. According to Plaintiff, on July 9, 2012, Officer Griffin allowed two inmates to enter Dorm 1 immediately after the inmates "had . . . stabbed another inmate right in front of him."  (Doc. 1 at 5).  Plaintiff claims that one of these two inmates was the leader of the GF gang. Plaintiff states the gang leader ordered his fellow gang members to attack all Muslims and, as a Muslim, Plaintiff knew that his life was in danger. Plaintiff explains that he "beat on the front door to G dorm #1 for approximately sixty seconds in an attempt to notify Officer Griffin that [his] life was in danger." (Doc. 1 at 6). Plaintiff alleges he had to stop calling for Officer Griffin when the same inmate who attacked him on April 19, 2012, started stabbing him. According to Plaintiff, he was stabbed five times in the back, once in the right elbow, and once in his right hand. Plaintiff claims that several fellow inmates called for Officer Griffin to intervene. However, the officer ignored their pleas. Plaintiff states that Defendants Oubre, Handberry, and Underwood were all aware of the danger Plaintiff faced in G Building Dorm 1, especially since he had already been attacked once by the same inmate. However, they failed to protect him.

Plaintiff explains that he had to be taken to the hospital after he was stabbed. According to Plaintiff, Officer Griffin was responsible for packing his personal property and storing it until Plaintiff returned from the hospital. However, Officer Griffin allowed other inmates to pack his property and, thus, it was all stolen. Plaintiff claims that Officer Griffin's "careless actions" caused him to lose all of his personal property. (Doc. 1 at 6).

Plaintiff states that he had twenty-two stitches placed in his back. When he was returned to the prison, his wounds were still bleeding and exposed. According to Plaintiff, Defendants Oubre, Handberry, and Underwood assigned him to be placed in "the hole" despite the fact that inmates in the hole are not allowed medical treatment. Plaintiff alleges he was not allowed to receive any medical treatment for his stab wounds for fifteen days. Plaintiff states that his wounds bled over his sheets and jumpsuit, both of which he was not allowed to change for fifteen days.

After leaving solitary confinement, Defendants Oubre, Handberry, and Underwood placed him back in the same G Building Dorm 1. Plaintiff states that he was attacked again on August 20, 2012 when Defendant Jordan released a known GF gang member from the hole into G Building Dorm 1.

### III. ANALYSES OF CLAIMS

1. <u>Disciplinary Proceedings</u>

Plaintiff claims that Lt. Lillian Warren found him guilty without sufficient proof in the May 10, 2012 disciplinary hearing. The Court first notes that Lt. Warren is not named as a Defendant in this action and it appears that Plaintiff is attempting to hold Defendants Oubre and

Handberry vicariously liable for the actions of Lt. Warren. It is well settled, however, that a supervisory official is not liable under § 1983 solely on the basis of respondeat superior or vicarious liability. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Even assuming that Oubre and Handberry could be held responsible for the alleged lack of due process involved in Plaintiff's disciplinary proceeding, Plaintiff still has not stated a viable claim. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court addressed challenges to disciplinary proceedings. The Court held that an inmate is required to demonstrate a "grievous loss" in the disciplinary proceeding in order to establish a liberty interest and for due process to attach. In *Sandin*, the inmate challenged his thirty-day segregation sentence based on a due process violation. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation, nor is there a state-created liberty interest to be free from such segregation. *Id*. at 487. The Court concluded that no liberty interest was implicated by placement in disciplinary segregation; therefore, no due process was required. *Id.* The Court noted that this particular ruling was a return to the due process principles of *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976), both of which required an inmate to suffer a "grievous loss" before a liberty interest could be found. *Sandin*, 515 U.S. at 478-83. The Court held that liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 480. The Court concluded that confinement in disciplinary segregation for thirty days was not a dramatic departure from the ordinary conditions of prison life, but was instead the type of

discipline an inmate should expect as an ordinary incident to his criminal sentence. The Court further held that disciplinary segregation "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id*. at 485-86.

In this case, Plaintiff simply has not shown what punishment he received as a result of the disciplinary proceedings.  He certainly has not alleged he suffered any type of atypical or significant deprivation.  *Id*.  If Plaintiff was placed it any type of administrative segregation, he was obviously allowed to return to his regular dorm in G Building in approximately sixty days because he was attacked by another inmate in that dorm on July 9, 2012.  *See Rodgers v. Singletary*, 142 F.3d 1252, 1252-53 (11th Cir. 1998) (plaintiff failed to show he was deprived of a constitutionally protected liberty interest, "as defined in *Sandin*," based on his placement in administrative confinement "for approximately two months"); *Al-Amin v. Donald*, 165 F. App'x 733 (11th Cir. 2006) (thirty-month administrative confinement not violative of due process where conditions are substantially similar to conditions of general population); *Pray v. Brown*, No. 5:04cv110/SPM/AK, 2006 U.S. Dist. LEXIS 101032 at *23-*24 (N.D. Fla. June 6, 2006) (sixty-day administrative confinement "cannot show deprivation of a protected liberty interest"). Moreover, even if Plaintiff had restrictions placed on telephone, visitation, or commissary privileges, such restrictions do not amount to "dramatic departures" from the ordinary conditions of confinement.  *See Washington v. Wigington*, No. 1:12-CV-0637-WSD-JFK, 2012 U.S. Dist. LEXIS 125175 at *8 (N. D. Ga. July 27, 2012).

Because Plaintiff, at this time, has not shown he suffered any type of punishment as a result of the May 10, 2012 disciplinary proceeding, it is **RECOMMENDED** that this claim be **DISMISSED** without prejudice.

Under 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the District Judge to whom this case is assigned within fourteen (14) days after being served with a copy of this Order and Recommendation.

2.  Loss of Personal Property

Plaintiff claims that Officer Griffin failed to follow proper procedure and carelessly allowed his personal property to be stolen by other inmates.  The allegation that the deprivation of personal property resulted from Officer Griffin's negligence fails to state a constitutional claim.  Mere negligence by prison officials may state a claim under state law, but is insufficient to establish a constitutional violation.  *Daniels v. Williams*, 474 U.S. 327, 333 (1986).

To any extent that Plaintiff claims Officer Griffin intentionally allowed other prisoners to steal his personal property, such allegation is governed by *Hudson v. Palmer*, 468 U.S. 517 (1984).  In *Hudson,* the Supreme Court held:

> [A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.  For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.
> *Id*. at 533.

The State of Georgia, pursuant to O.C.G.A. § 51-10-1, provides an adequate postdeprivation remedy whereby Plaintiff may sue Defendant Griffin in the appropriate state court and recover damages.  Thus, there has been no constitutional violation.

It is therefore **RECOMMENDED** that Plaintiff's claim regarding the deprivation of his personal property be **DISMISSED** from this action.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the district judge to whom this case is assigned, within fourteen (14) days after being served a copy of this Order and Recommendation.

3. <u>Brian Owens</u>

Plaintiff has named Brian Owens as a Defendant in the heading of his complaint. However he makes no allegations against this individual in the body of his complaint.  A § 1983 claim must allege a causal connection between a defendant and an alleged constitutional violation.  *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).  Owens is subject to dismissal on this ground alone.

Moreover, as the Court explained above, a plaintiff cannot prevail under 42 U.S.C. § 1983 based on a theory of respondeat superior or supervisory liability.  *Rogers v. Evans*, 792 F.2d 1052 (11th Cir. 1986); *H.C. by Hewett v. Jarrard*, 786 F.2d 1080 (11th Cir. 1986).  Instead the plaintiff must show that the supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.  *H.C. by Hewett*, 786 F.2d at 1086-87.  "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  However, "[t]he deprivations that constitute widespread abuse sufficient to notify supervising officials must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  Id.

Plaintiff does not allege that Brian Owens was personally involved in any of his alleged constitutional deprivations.  Moreover, Plaintiff's assertions do not establish the causal

connection necessary to hold this Defendant responsible for the plaintiff's alleged constitutional deprivations.

It is therefore **RECOMMENDED** that Brian Owens be **DISMISSED** from this action.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to this recommendation with the district judge to whom this case is assigned, within fourteen (14) days after being served a copy of this Order and Recommendation.

4. Remaining Claims

Construed broadly, the Court cannot find that Plaintiff's claims that (1) Defendants Oubre, Jordan, Underwood, Handberry and Griffin failed to protect him and (2) Defendants Oubre, Underwood, and Handberry failed to provide him necessary medical care following his stabbing an hospital stay are frivolous or fail to state claims at this point in the litigation.

Therefore, these two claims shall go forward against these five Defendants.

It is hereby **ORDERED** that service be made against Defendants and that they file a Waiver of Reply, an Answer, or such other response as may be appropriate under Rule 12 of the FEDERAL RULES OF CIVIL PROCEDURE, U.S.C. § 1915, and the *Prison Litigation Reform Act*.

**Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).**

### DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall at all times keep the clerk of this court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings filed herein.

**DUTY TO PROSECUTE ACTION**

Plaintiff is advised that he must diligently prosecute his complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

**FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE**

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a <u>certificate of service</u> indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

**DISCOVERY**

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has

been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the FEDERAL RULES OF CIVIL PROCEDURE.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and interrogatories) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the Defendants and granted by the court.  This 90-day period shall run separately as to each Plaintiff and each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).  The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.  The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery:  <u>except with written permission of the court first obtained</u>, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE may not exceed FIFTEEN (15)

requests to each party.    No party shall be required to respond to any such requests which exceed these limitations.

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

Dismissal of this action or requests for judgment will not be considered by the court absent the filing of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than thirty (30) days after the close of discovery unless otherwise directed by the court.

**DIRECTIONS TO CUSTODIAN OF PLAINTIFF**

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the *Prison Litigation Reform Act*, Plaintiff's custodian is hereby authorized to forward payments from the Prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.

IT IS FURTHER ORDERED AND DIRECTED that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

**PLAINTIFF'S OBLIGATION TO PAY FILING FEE**

Pursuant to provisions of the *Prison Litigation Reform Act*, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the *Prison Litigation Reform Act*. Collection from the Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments. In addition, Plaintiff's complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED and RECOMMENDED**, this 24th day of January, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge